**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DARRYL ELTON SCOTT,** | ) | |
| **AIS #250107,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CASE NO. 2:21-CV-573-MHT-SRW** |
| **JEFFERSON S. DUNN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF THEIR MOTION TO**
**DISMISS THE PLAINTIFF'S _AMENDED_ COMPLAINT**

Come now Defendants Jefferson Dunn, Antonio McClain, Terrell Holcey, Chermaine Baskin, Brandon Boyd, and Jacquelyn Urqhart, to submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff's complaint, as is stands, is legally insufficient and the facts alleged are too indefinite and implausible to overcome dismissal, much less the individual defendant's entitlement to qualified immunity.

### ARGUMENT

**I.    PLAINTIFF'S OFFICIAL CAPACITY MONEY DAMAGES CLAIMS ARE DUE TO STRICKEN AS A MATTER OF LAW BASED ON ELEVENTH AMENDMENT IMMUNITY.**

Since Defendants Dunn, McClain, Holcey, Baskin, Boyd and Urqhart are officials or employees of the State of Alabama, Plaintiff's official-capacity claims seeking money damages must be considered as claims against the State of Alabama itself. See Doc. 46-1.3,415, 16. "'[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies.'" Selensky v. Alabama, 619 F. App'x 846, 848 (quoting Alabama v. Pugh, 473 U.S. 781, 781 (1978)). "The amendment effectively bars such actions for monetary relief even when the state is not named as a party." Williams v. Bennett, 689 F.2 1370, 1376 (11th Cir. 1982). "[A]bsent waiver by the State or valid congressional override, the Eleventh

1

Amendment bars a damages action against a State in federal courts. … This bar remains in effect when State officials are sued for damages in their official capacity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).  As recognized by the Eleventh Circuit and the U.S. Supreme Court, based on Article I, Section 14 of the Constitution of Alabama, which states "the State of Alabama shall never be made a defendant in any court of law or equity," the State of Alabama clearly has not waived Eleventh Amendment immunity. <u>See</u> <u>Pugh</u>, 438 U.S. at 782; <u>see also</u> <u>Selensky</u>, 619 F. App'x at 849.  Further, "'Congress has not abrogated Eleventh Amendment IImmunity in section 1983 cases.'" <u>Selensky</u>, F. App'x at 849 (quoting <u>Carr v. Cty of Florence, Ala.</u>, 916 F.2d 1521, 1525 (11th Cir. 1990).  ADOC operates as an agency of the State of Alabama. <u>See</u> Ala. Code § 14-1-1.1 (1975).  Thus, Plaintiff's federal claims for damages against these defendants *in their official capacities* are barred by Eleventh Amendment immunity and should be dismissed.

## II.    PLAINTIFF'S FOURTEENTH AMENDMENT DUE PROCESS CLAIM HAS NO APPLICATION TO THE FACTS ALLEGED IN THE COMPLAINT AND IT IS DUE TO STRICKEN.

It is the Eighth Amendment and not the Fourteenth Amendment that gives shape to prisoner rights and defines the adequacy of prison conditions.  Plaintiff's complaint never explains exactly what process was due to Scott.  It was the criminal legal process that committed him to the custody of ADOC.  Once there, Scott's rights are determined by the Eighth Amendment, not the Fourteenth. <u>See</u> <u>Caruso v. Hill</u>, No. 120CV0084AWIEPGPC, 2020 WL 4018141, at *11 (E.D. Cal. July 15, 2020) (explaining that "the Eighth Amendment, and not the Fourteenth Amendment, provides the applicable standards for evaluating convicted prisoners' conditions of confinement claims."); <u>Washington v. Blum</u>, No. 18-CV-01782-SMY, 2019 WL 77330, at *3 (S.D. Ill. Jan. 2, 2019)(holding that "in the context of medical claims brought by convicted persons, the Eighth Amendment's prohibition against cruel and unusual punishment provides the primary source of substantive protection, not the Fourteenth Amendment.").

2

The Complaint does make one brief allusion to racial discrimination which falls under the purview of the Fourteenth Amendment, but no facts in the complaint lay the foundation for such a legal claim.  Doc. 46-12.  Just as out of place are the Plaintiff's First, Fourth and other Fourteenth Amendment arguments.  All are implausible in this context and due to be stricken.  Of course, Scott is being held *with* due process,  he admits his conviction on 46-11 (paragraph 35).

### III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A PLAUSIBLE DELIBERATE INDIFFERENCE CLAIM AGAINST DEFENDANTS.

Plaintiff's general pleading obligations are well-established:  "[A] complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To take a complaint from possible to plausible "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Plaintiff must assert more than "an unadorned, the defendant-unlawfully-harmed-me accusation."  Id.

Compounding Plaintiff's challenge is his attempt to state a deliberate indifference claim.  "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if [the official] is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury."  Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2020).  "To establish a deliberate-indifference claim, a plaintiff must make both an objective and a subjective showing."  Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1944)).  The first element, whether there was a substantial risk of serious harm, is assessed objectively and requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."  Marbury v. Warden, 936 F.3d at 1233 (quoting Lane v. Philbin, 835 F.3d 1302, 1307 (internal citations omitted)).  "The second component, the subjective showing, requires a plaintiff to establish a defendant's deliberate

indifference to the risk of serious harm by "making three sub-showings: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" Swain, 961 F.3d at 1285 (quoting Lane v. Philbin, 835 F.3d at 1308).

Establishing deliberate indifference is a high bar to overcome. Id. In establishing the subjective showing, "[a] plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'" Id. (quoting Farmer, 511 U.S. at 834). (Emphasis added). This culpable state of mind exceeds malpractice or ordinary negligence and "is in fact akin to 'subjective recklessness as used in the criminal law.'" Swain, 961 F.3d at 1288 (quoting Farmer, 511 U.S. at 839-40). "Finally, the plaintiff must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." Marbury, 936 F.3d at 1233 (quoting Rodriguez v. Sec'y for Dep't of Corrs., 508 F.3d 611, 622-23 (11th Cir. 2007)). Scott failed to make allegations sufficient to establish that Plaintiff faced a substantial risk of serious harm, that each Defendant had subjective knowledge of a substantial risk of serious harm him, or that a causal connection existed between any alleged actions of each of these individual defendants and the alleged harm suffered by Mr. Scott.

In fact, on several occasions, Scott, in error, employs *state-law-negligence terms* in an effort to create liability in an Eighth Amendment deliberate indifference context. For instance, on page 11 of the Amended Complaint, Scott refers to "gross negligence" and a duty of care being breached. On page 13, he claims "negligence" lead to his injury. Such claims are grist for the state law tort mill, not an Eighth Amendment federal claim.

**A. This pleading is a "shotgun" complaint.**

Plaintiff's Complaint is a textbook example of a "shotgun pleading." Such complaints are cumbersome, confusing complaints that do not comply with pleading requirements. See Weiland

v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 nn. 11-15 (11th Cir. 2015).[1]  "The unifying characteristic of all types of shotgun pleadings is that they fail to ... give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Id. at 1323.   The Eleventh Circuit "roundly, repeatedly, and consistently condemn[s]" shotgun pleadings.  Davis v. Coca–Cola Bottling Co. Consol., 516 F.3d 955, 979 (11th Cir. 2008). Much like a shotgun blast, Plaintiff sprays an array of allegations throughout his Complaint, without relating the allegations to specific defendants or establishing relevance to the claim.

The most illustrative example of the Complaint's "shotgunniness" is the fact that it refers to "Defendants" or "ADOC Defendants"  or "ADOC" or "correctional officers" or "officers" or "Deputies" or some such general descriptor no less than *56 times*. This assumes that*,* in an individual capacity money damages case, the action of every single defendants (much less the Department itself) could create individual liability on behalf of other defendants.  Of course, it doesn't work like that.  Each individual defendant can be held liable only for his own actions. There is no collective or respondeat superior liability under 42 U.S. § 1983 actions.

**B.  Plaintiff's allegations are implausible.**

Applying Iqbal, this Court can validly ask the question, is it plausible that each of these Defendants took no reasonable actions in response to their knowledge generally of the challenging prison conditions generally described in the Complaint?  Of course not.  This Court is well-aware and can take judicial notice that ADOC officials and employees expended great effort and expense, often a great risk, to address issues like those described in the Complaint, primarily inmate-on-

---

[1] There are four (4) basic types of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which.  Weiland, 792 F.3d at 1321–23.  Plaintiff's Complaint falls into types (2) and (3).  (See Doc. No. 46).

inmate violence and the use of excessive force by ADOC staff.  This Court recently presided over

a criminal trial where a former supervisor was convicted of using excessive force and sentenced

to nine years in federal prison.  The prosecution was initiated at the request of ADOC officials

who fully cooperated in making sure justice was done.  Commissioner Dunn even testified at length

at the trial.

Further, Scott's allegations, writ large, seem to be saying that each of these individual

Defendants somehow collaborated and conspired to cause all his alleged injuries—despite the fact

that they were spread out over a number of years, while he was assigned to *six* different prisons in

the Middle and Northern Division[2], while in the custody of 21 different ADOC officials and

employees or classes of supervisors (some named, some fictitious).[3]  Such allegations are the very

definition of implausible.

### C.  These allegations fail to state a claim for deliberate indifference.

To survive this motion to complaint, the Inmate Scott allege that that each of these

defendants knew of all the harm that he was facing—in every situation—knew it in time to prevent

the harm—had the power to prevent the harm, but did nothing to help him.  Yet the Complaint

does not allege that with sufficient clarity and specificity to accomplish this goal—even beyond

---

[2] Any claims for actions occurring in prisons located in the Northern Division of Alabama (i.e., Bibb and Hamilton) should not be made part of this action.  The Court lacks jurisdiction and the venue is improper.

[3] Fictitious party pleading is disfavored if not outright prohibited in federal court.  Fictitious parties should be stricken.

> The federal courts do not allow claims against fictitious defendants, except under limited circumstances where the plaintiff sufficiently describes the defendant to allow for service of process. See Vielma v. Gruler, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010)) (" 'As a general matter, fictitious-party pleading is not permitted in federal court.' "); DiPietro v. Med. Staff at Fulton Cty. Jail, 805 F. App'x 793, 795 (11th Cir. 2020) (citing Richardson, 598 F.3d at 738; Dean, 951 F.2d at 1215-16) ("[B]ecause fictitious-party pleading generally is not permitted in federal court, the plaintiff must specifically identify the parties he is suing, if not by name then by providing a description of each individual that is sufficiently clear and detailed to permit service of process.")

Kilpatrick v. Lauderdale Cty. Sheriff's Dep't Alabama, No. 3:20-CV-00098-HNJ, 2020 WL 6937843, at *10 (N.D. Ala. Nov. 13, 2020).

the implausibility of such a claim.

Plaintiff's complaint is drafted as if the resulting harm to him is evidence *ipse dixit* of deliberate indifference.  But that is not the law of this circuit.  "A resulting harm thus cannot alone establish a culpable state of mind."  Swain v. Junior, 961 F.3d 1276, 12887 (11th Cir. 2020) 287 (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994)).  In other words, these Defendants must have been aware ahead-of-time of an inordinate risk to Scott, and then failed to undertake a reasonable response to that perceived harm.  Moreover, the law of deliberate indifference must not focus solely on what the Defendants failed to do, but should also analyze what Defendants did do in an effort to address perceived risks.  See Swain v. Junior, 961 F.3d 1276, 1288-89 (11th Cir. 2020) (Admonishing district court for not asking, "[w]hat did the defendants do?" and refusing to conclude that "the defendants here acted unreasonably by 'doing their best.'").

The Complaint's allegations that Defendants were "negligent" or "grossly negligent" illustrate the insufficiency of Plaintiff's deliberate indifference position.  Doc. 46-11, 13.  See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) (treating deliberate indifference as requiring a higher mens rea than gross negligence); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (characterizing deliberate indifference test as requiring conduct "that is more than mere negligence"); Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000) (deliberate indifference requires much more than mere negligence) (emphasis added); Townsend, 601 F.3d 1152, 1158 (11th Cir. 2010) (rejecting "more than mere negligence" standard from McElligott and citing Cottrell for principle that "a claim of deliberate indifference requires proof of more than gross negligence"); Melton, 841 F.3d at 1223 n.2 (11th Cir. 2016) (stating culpability requirement as more than mere negligence, rejecting Townsend's holding that a claim of deliberate indifference requires more than gross negligence, and noting that "the phrase 'more than gross negligence' " is

not found in either <u>Cottrell</u> or <u>Farmer</u>").  These cases and descriptions are cited in <u>Smith v. Wood</u>, 2021 WL 4452526  at *3 n. 2 (11th Cir., Sept. 29, 2021) for the proposition that there is some disagreement as to whether gross negligence could equate to deliberate indifference.

   **D.    Plaintiff failed to state a claim under section 1983 for supervisory liability against  Dunn, McClain, Holcey, Baskin, Boyd and Urqhart.**

   "'It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'"  <u>Harrison v. Culliver</u>, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003)); <u>see also</u> <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999); <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1396 (11th Cir. 1994.  Instead, "a plaintiff seeking to hold a supervisor liable for constitutional violations must show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."  <u>Harrison</u>, 746 F.3d at 1299 (citing <u>Cottone</u>, 326 F.3d at 1360).  "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'"  <u>Cottone</u>, 326 F.3d at 1360 (quoting <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1234 (11th Cir. 2003)).  To constitute "widespread abuse" to put a supervising official on notice, the alleged constitutional violations "'must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'"  <u>Keith v. DeKalb County, Georgia</u>, 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Plaintiff failed to meet this standard.  There is no allegation that Dunn personally participated in these actions.  The same is true for some of the other defendants.

   **E.    Plaintiff failed to establish a causal link between the actions of these individual defendants, the alleged Eighth Amendment violations and Plaintiff's harm.**

   Plaintiff "must show a 'necessary causal link' between the officer's failure to act

reasonably and the plaintiff's injury." Marbury, 936 F.3d at 1233 (quoting Rodriguez v. Sec'y for

Dep't of Corrs., 508 F.3d 611, 622-23 (11th Cir. 2007)).  As to causation, the "'critical question'

is whether [the official] was 'in a position to take steps that could have averted the [injury] … but,

through [deliberate] indifference, failed to do so.'"  Rodriguez, 508 F.3d at 622 (quoting Williams

v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982)).  The Eleventh Circuit recognizes at least "three

ways to establish such a causal connection":

> when a history of widespread abuse puts the responsible supervisor
> on notice of the need to correct the alleged deprivation, and he fails
> to do so.  Alternatively, the causal connection may be established
> when a supervisor's custom or policy ... result[s] in deliberate
> indifference to constitutional rights or when facts support an
> inference that the supervisor directed the subordinates to act
> unlawfully or knew that the subordinates would act unlawfully and
> failed to stop them from doing so.

Harper v Lawrence County, Ala., 592 F.3d 1227, 1236 (11th Cir. 2010) (quoting Cottone v. Jenne,

326 F.3d 1352, 1360-61 (11th Cir. 2003)); see also Marbury, 936 F.3d at 1234 (sixteen incidents

of violence witnessed by the plaintiff over a period of six years and direct threats failed to provide

supervisors notice of a constitutional violation); Harrison, 746 F.3d at 1299-1300 (thirty-three

incidents over three years not sufficient to establish widespread abuse). Such allegations are

woefully absent from the Plaintiff's complaint (as would the proof of such allegations be at latter

stages of litigation).

## IV.    QUALIFIED IMMUNITY PROTECTS DUNN, MCCLAIN, HOLCEY, BASKIN, BOYD AND URQHART BECAUSE PLAINTIFF FAILS TO STATE A CONSTITUTIONAL CLAIM AND FAILS TO ALLEGE VIOLATION OF CLEARLY ESTABLISHED LAW.

Although section 1983 creates a private right of action for deprivation of constitutional

rights under color of State law, "[q]ualified immunity shields federal and state officials from

money damages unless a plaintiff [establishes] facts showing (1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the

challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Because qualified immunity is an affirmative defense, a public official bears the burden of pleading it in the first instance and showing he or she acted within his or her discretionary authority. Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). The burden then shifts to the plaintiff, who must show that the public official violated a right so clearly established "that every reasonable official would have understood that what he [or she was] doing violate[d] that right." Id.; see also Caldwell v. Brogden, 678 So. 2d 1148, 1151-52 (Ala. Civ. App. 1996); Sexton, 748 So. 2d at 216-17. If the plaintiff fails to carry this burden, qualified immunity applies and the public official is immune from the plaintiff's suit. Throughout the analysis, it must be kept in mind that "qualified immunity for government officials is the **rule**, [and] liability and trials for liability the **exception**." Alexander v. Univ. of N. Fla., 39 F.3d 290, 291 (11th Cir. 1994) (emphasis added).[4]

### A.    Defendants Dunn, McClain, Holcey, Baskin, Boyd, and Urquhart Acted within their Discretionary Authority.

A government employee acts within his discretionary authority when he performs "a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). The question at this stage is not "whether the act complained of was done for an improper purpose, but 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" Plotkin v. United States, 465 F. App'x 828, 831-32 (11th Cir. 2012) (quoting Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)). The only question to consider is whether the acts "are of a type that fell within the employee's job responsibilities." Holloman, 370 F.3d at

---

[4] As recognized by the Court in Hadder v. Walker County, Alabama, "[t]he Court must consider the defense of qualified immunity as soon as possible in the litigation, including at the motion to dismiss stage." No. 6:14-cv-00586-LSC, 2014 WL 4957231, at *4 (N.D. Ala. Oct. 2, 2014) (citing Hunter v. Bryant, 502 U.S. 224, 233-34 (1991)).

1265.

Courts should not be "overly narrow" in interpreting this requirement.  Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).  As one district judge from the Middle District of Alabama has observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear."  Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

Clearly, the actions of these Defendant-correctional officials—to the extent that Plaintiff alleged anything specific about them—occurred within the line and scope of their duties as ADOC officials and employees.

### B. The Complaint fails to state a "deliberate indifference" claim against these Correctional Official Defendants and their conduct violated "clearly established law".

Because Dunn, McClain, Holcey, Baskin, Boyd,  and Urquhart, as alleged by Plaintiff, acted within their roles as State employees and correctional officials, the burden now shifts to Plaintiff to demonstrate that they violated Plaintiff's constitutional rights.  Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009).  Plaintiff cannot do so.  To reach this mark, Plaintiff must overcome two hurdles to show that an official has violated a party's constitutional rights.  First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected right, and second, the plaintiff must demonstrate that the right was clearly established at the time of the misconduct.  Pearson v. Callahan, 555 U.S. 223, 232 (2009); Grider v. City of Auburn, 618 F. 3d 1240, 1254 (11th Cir. 2010).  A plaintiff must satisfy both prongs of the analysis to overcome a defense of qualified immunity.  Grider, 618 F.3d at 1254. The determination of these elements may be conducted in any order.  Pearson, 555 U.S. at 236. Plaintiff fails to clear either hurdle.  Plaintiff's failure to state a claim for a constitutional violation

is addressed above.

Plaintiff also fails to meet his secondary burden of establishing a constitutional right recognized by "clearly established" law. Plaintiff must identify controlling decisions in the jurisdiction in which the action is pending that establish the law in a clear and unambiguous manner. Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1032 n. 10 (11th Cir. 2001) (*en banc*). The existing precedent presented by a plaintiff must place the constitutional question beyond debate. Malley v. Briggs, 475 U.S. 335, 341 (1986); Ashcroft, 563 U.S. at 741 ("A government official's conduct violates clearly established law when at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."). A public official is not strictly liable in money damages for what he or she might could have done differently or what he or she perhaps could have prevented, but only when he or she transgresses a bright line drawn in a contour of constitutional law in terms of their required conduct or response. See id.

Further, "[t]he difficult part of this inquiry [i.e., the identification of clearly established law] is identifying the level of generality at which constitutional rights must be clearly established." Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007). The United States Supreme Court, however, has "repeatedly told courts ... not to define clearly established law at a high level of generality." Ashcroft, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (internal citations omitted).

Because Plaintiff cannot show by controlling precedent a constitutional right so clearly established that it is "concrete" in this "factually defined context," these Defendants are entitled to

qualified immunity.

V.    **PLAINTIFF LACKS STANDING TO PROSECUTE THE INJUNCTIVE RELIEF CLAIM; AND NO INJUNCTIVE RELIEF CLAIM IS PLAUSIBLE IN THE INSTANT CASE.**

Plaintiffs lack standing to prevail on any injunctive relief.  Prisons, prison staff, and the inmate population of prisons are not static, but highly dynamic.[5]  This is a big problem for Scott's injunctive relief claim. As a matter of law, Scott cannot obtain injunctive relief without proving a strong likelihood that the injury he suffered previously will be repeated in a very similar manner by the same actors in the future.  See generally City of Los Angeles v. Lyons, 461 U.S. 95, 105-06, 103 S. Ct. 660, 667 (1983).  Of course, the Plaintiff has not averred (nor could he reasonably allege) that he is *likely* to be the recipient of future assaults by co-inmates or excessive force by these Defendants under similar circumstances.  See Whitlow v. City of Sumiton, No. 6:12-CV-1077-PWG, 2012 WL 4479269, at *4 (N.D. Ala. Aug. 31, 2012), report and recommendation adopted sub nom. Whitlow v. City of Sumiton, Ala., No. CV 12-S-1077-J, 2012 WL 4476674 (N.D. Ala. Sept. 20, 2012) ("Because there is nothing in the complaint suggesting that Plaintiff is substantially likely in the future to be arrested or subjected to excessive force under similar circumstances or to be denied receive treatment for a serious medical condition while in custody, she lacks standing to pursue her claims for declaratory and injunctive relief.");  Cadiz v. Kruger, No. 06 C 5463, 2007 WL 4293976, at *10 (N.D. Ill. Nov. 29, 2007) "[I]n the typical excessive force case that would give rise to an accompanying Monell claim, a plaintiff would lack standing to seek prospective injunctive relief for a past event that (as to that plaintiff) has no foreseeable likelihood of recurring.");  Gustafson v. Vill. of Fairport, 106 F. Supp. 3d 340, 347 (W.D.N.Y. 2015)  (Given, inter alia, that the wrongdoer is no longer employed by the city, "there is no evidence in the record before the Court to support a finding that Plaintiff is likely to have a future

---

[5] Scott is no longer assigned to Bullock, but to Ventress Correctional Facility in Barbour County.

encounter with the FPD such that he has standing to seek prospective relief."); See generally, Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1554 (11th Cir. 1989) and Kassman v. KPMG LLP, 925 F.Supp.2d 453, 465-66 (S.D.N.Y.2013) ("Put another way, a plaintiff seeking prospective relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future. [Accordingly,] a plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future .") (quoting City of Los Angeles in Wood v. Dixon, No. CIV.A. 13-0278-KD-N, 2013 WL 6183143, at *4 (S.D. Ala. Nov. 26, 2013)).

Such a claim—that Scott would likely be recipients of similar excessive force—would also be implausible, as a matter of law.

## VI.    ANY INJUNCTIVE RELIEF SOUGHT HERE WOULD DUPLICATE OR CONTRADICT THE RELIEF SOUGHT BY DOJ IN THE PENDING CRIPA ACTION.

It is difficult to conceive how any injunctive relief sought in this case directed toward the prevention of excessive force toward Inmate Scott would not duplicate or contradict any relief sought by DOJ in the pending CRIPA case. United States of America v. the State of Alabama, 2:20-CV-01971-RDP (ND Ala. 2020).  Clearly, injunctive relief sought here would result in duplicative litigation with potentially conflicting results, not to mention creating a waste of judicial and party resources.  Allowing Scott's injunctive claim to go forward despite the pendency of the DOJ CRIPA action would be inconsistent with the law as it has developed in this area.  Courts routinely hold that individual inmates may not seek injunctive relief that duplicates relief in an existing class action.  See, e.g., McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is an existing class action.  To permit them would allow interference with the ongoing class action."); Long v. Collins, 917 F.2d 3, 4-5 (5th Cir. 1990)

(same); Reed v. Richards, 32 F.3d 570 (Table), 1994 WL 259442, at *4 (7th Cir. 1994) (same). The same rationale applies to Plaintiff here.

## VII. THIS COMPLAINT IS LIKELY BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

1.      The statute of limitations for a civil rights action filed pursuant to 42 U.S.C § 1983 is two years. See Lufkin v. McCallum, 956 F.2d 1104, 1106 (11th Cir. 1992) ("In Owens v. Okure, the Supreme Court held that in section 1983 suits the federal courts are to borrow the 'general' or 'residual' statute of limitations for personal injuries provided under the law of the state where the court hearing the case sits [and i]n the instant case, [in Alabama] that period is two years.")

2.      The original complaint was filed on August 27, 2021, the amended complaint on April 22, 2022.

3.      It appears that the conduct complained of by Mr. Scott might have occurred prior to August 27, 2019, and certainly before April 22, 2020.

## CONCLUSION

Based on the foregoing, Defendants request that their motion to dismiss the Plaintiff's complaint be granted.

                                 Respectfully Submitted,

                                 Steve Marshall
                                 Attorney General

                                 Carrie Ellis McCollum (ELL037)
                                 General Counsel

                                 /s/ Bart Harmon
                                 Bart Harmon (HAR127)
                                 Assistant Attorney General

**ADDRESS OF COUNSEL:**
**Alabama Department of Corrections**
**Legal Division**
**301 Ripley Street**
**Post Office Box 301501**
**Montgomery, AL  36130-1501**
**334-353-3881**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July, 2022, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following (or by U.S. Mail to the non-CM-ECF participants):

Carolyn Elizabeth Litte Courson
Beasley Allen Crown Methvin Portis & Miles PC
P.O. Box 4160
218 Commerce Street
Montgomery, AL  36103

John Livingston Adams
Johnny Adams Law Firm LLC
324 Ellis Street
Union Springs, AL  36089

/s/ Bart Harmon
Bart Harmon (HAR127)
Assistant Attorney General