IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| DARRYL ELTON SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:21cv573-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as the | ) | |
| Commissioner of the | ) | |
| Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Darryl Elton Scott, a prisoner in the custody of the Alabama Department of Corrections (ADOC), filed this lawsuit naming as defendants former ADOC Commissioner Jefferson S. Dunn in his 'official' capacity and the following ADOC employees at Bullock County Correctional Facility in both their 'official' and 'individual' capacities: Antonio McClain, Chermaine Baskin, Terrell Holcey, Brandon Boyd, and Jacquelyn Urquhart.  He asserts claims under the First, Fourth Eighth, and Fourteenth Amendments as enforced through 42

U.S.C. § 1983.   The court has jurisdiction over these claims under 28 U.S.C. § 1331.

This lawsuit is now before the court on the defendants' motion to dismiss.  For the reasons explained below, the motion will be denied as to Scott's Eighth Amendment claims to the extent he has sued McClain, Holcey, and Baskin in their individual capacities for allegedly failing to protect him from being repeatedly raped by another prisoner, and to the extent he has sued Holcey and Baskin in their individual capacities for allegedly using excessive force against him.  The motion will be granted in all other respects.


## I.  FACTUAL BACKGROUND

At this stage of the litigation, this court confines itself to Scott's amended complaint and accepts his allegations, and the inferences that could be reasonably drawn from them, as true.  This "court may dismiss [the] complaint only if it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In September 2019, Scott, a non-violent prisoner at Bullock County Correctional Facility, told Warden McClain that another prisoner, Larry White, had threatened to hurt him. At that time, White, a gang member who had allegedly raped other inmates, was categorized as posing a credible threat to other inmates. However, McClain laughed when he received Scott's report and transferred Scott out of his cell and into the dormitory where White resided.

Officers Holcey and Baskin, while transferring Scott, repeatedly kicked him for no reason. Holcey told Scott that he was going to be "fucked in the ass and stabbed white boy, and maybe they will kill your retarded cracker ass." First Amended Complaint (Doc. 46) at 5. Baskin laughed. Then, Holcey threatened to spray Scott with mace. A witness observing Scott's transfer confirmed that Holcey and Baskin were laughing at Scott, saying they were going to watch him get abused, and that

3

there was nothing Scott's "stupid white ass could do about it." *Id.* at 5.

Inside the dormitory, as Officers Holcey and Baskin had portended, White made good on his threats. While being observed by Holcey and Baskin, White dragged Scott to a bunkbed. The bunk was covered with a sheet to obstruct what happened inside. There, White forcibly raped Scott.

After the rape, Scott was taken to an outside facility for treatment. After being treated, he was then brought back to Bullock, where he was placed in the same dormitory as before. There, he was beaten and raped by White a second time.

As a result, Scott suffers from Post-Traumatic Stress Disorder, Chronic Depression, tears in his rectum from being raped, hearing loss from being kicked, chronic pain, flashbacks, and nightmares.

## II. DISCUSSION

### A. *Official-Capacity Claims*

As stated, Scott sues McClain, Holcey, Baskin, Boyd, and Urquhart in both their individual and official capacities, and he sues Dunn in only his official capacity. Because the defendants have been sued in their official capacities, the court will take up the Eleventh Amendment issue first.

To the extent that Scott seeks monetary damages from defendants in their official capacities, such relief is unavailable because his claims are considered as being against the State, and the Supreme Court has held that the Eleventh Amendment bars suits for monetary damages against the State. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). However, the Eleventh Amendment poses no obstacle to Scott's claims for damages against a defendant in his individual capacity. Therefore, Scott's claims to the extent his seeks money damages from the

defendants in their official capacities must be dismissed.

However, Scott also seeks injunctive and declaratory relief from the defendants in their official capacities. Because Dunn no longer serves as ADOC Commissioner, the court cannot order him to "do something or refrain from doing something in [his] capacity as a government actor." *Mitchell v. Town of Hayneville, Alabama*, 2020 WL 7480551, at *10 (M.D. Ala. Dec. 18, 2020) (Thompson, J.) (noting that "[o]fficial-capacity claims are used to seek equitable relief against current government officials."). And, because Dunn is sued in only his official capacity and because no relief is available against Dunn in that capacity, Dunn is due to be dismissed altogether.

The remaining defendants are also due to be dismissed to the extent Scott seeks declaratory and injunctive relief from them in their official capacities. Scott asks that they be required to take and refrain from taking many actions, including that he "be moved forever from

Bullock County Correctional Facility." First Amended Complaint (Doc. 46) at 15. Defendants assert that Scott "lack[s] standing to prevail on any injunctive relief," because he is no longer at the Bullock facility and his amended complaint does not establish that there is a "strong likelihood that the injury he suffered previously will be repeated in a very similar manner by the same actors in the future." Brief in Support (Doc. 55) at 13.

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive and declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir. 1999). Because Scott is no longer at Bullock and because there is nothing in the amended complaint indicating that defendants will injure him again under similar circumstances, he lacks standing to pursue his official-capacity claims for injunctive and declaratory relief against McClain, Boyd,

Urquhart, Holcey, and Baskin.   Accordingly, Scott's claims to the extent his seeks injunctive and declaratory relief from these defendants in their official capacities must be dismissed.

In conclusion, Dunn, McClain, Boyd, Urquhart, Holcey, and Baskin will be dismissed to the extent they have been sued in their official capacities, and, because Dunn has been sued in only his official capacity, he will be dismissed altogether.

### B. Shotgun Pleading

The remaining defendants--McClain, Boyd, Urquhart, Holcey, and Baskin--further argue that the amended complaint violates Federal Rules of Civil Procedure 8(a)(2) and 10(b).   They contend that the complaint is an impermissible "shotgun pleading."   A complaint violates pleading rules when it presents claims in a manner where the defendant cannot "discern what [the plaintiff] is claiming and frame a responsive pleading." *T.D.S. Inc. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520, 1544

n.14 (11th Cir. 1985).  At bottom, the complaint "must
give the defendants adequate notice of the claims against
them and the grounds upon which each claim rests."
*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d
1313, 1323 (11th Cir. 2015).

Here, as defendants point out, Scott's amended
complaint commits several of the "sins" that define a
shotgun pleading, including, "not separating into a
different count each cause of action" and "asserting
multiple claims against multiple defendants without
specifying which of the defendants are responsible for
which acts or omissions."  *Id*. at 1322–23.

In Count I, the amended complaint's only denominated
count, Scott alleges violations of the First, Fourth, and
Fourteenth Amendments, as well as unconstitutional race
discrimination.[1]  *See* First Amended Complaint (Doc. 46)

---

1.  The court notes that, as explained later, Scott
also asserts Eighth Amendment claims, which would be
brought through the Due Process Clause of the Fourteenth
Amendment.  *See Timbs v. Indiana*, 139 S. Ct. 682, 687
(2019) ("With only a handful of exceptions, [the Supreme
Court] has held that the Fourteenth Amendment's Due
Process Clause incorporates the protections in the Bill

at 11–13.  To be sure, after careful review of Count I,
the court cannot discern specifically what causes of
action Scott is alleging under these amendments, and even
whom Scott is alleging them against.  Indeed, "it is
virtually impossible to know which allegations of fact
are intended to support which claims" brought under the
First, Fourth, and Fourteenth Amendments.  *Weiland*, 792
F.3d at 1325 (citations omitted).  However, rather than
require Scott to replead claims under the First, Fourth,
and Fourteenth Amendments, the court will dismiss his
amended complaint to this extent, for one simple reason:
the factual allegations in the complaint do no set forth
claims under these amendments, so as to survive Federal
Rule of Civil Procedure 12(b)(6).   However, if Scott
still wants to pursue claims under these amendments, he
can file a motion to amend, with a proposed new amended

---

of Rights, rendering them applicable to the States.").
However, the court understands Scott to also be asserting
Fourteenth Amendment violations separate from the Eighth
Amendment.   Therefore, when the court refers to the
Fourteenth Amendment in this opinion, it is not referring
to Scott's Eighth Amendment claims.

complaint attached that not only cures the shotgun-pleading defect but also sets forth factual allegations that would support a finding of one or more violation of the First, Fourth, and Fourteenth Amendments.

However, Scott's amended complaint's allegations, while not explicitly employing the legal terms of art, do clearly set forth two causes of action against these defendants under the Eighth Amendment: failure to protect and excessive force. Indeed, defendants respond to both these types of claims. Because the complaint is "informative enough to permit [the] court to readily determine if [these causes of action] state a claim upon which relief can be granted," the court must make such a determination, and dismissal under Rules 8(a)(2) and 10(b) is inappropriate. *Weiland*, 792 F.3d at 1326.

Accordingly, the court will take up the defendants' Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim as to Scott's Eighth Amendment failure-to-protect and excessive-force claims; all other

claims are dismissed without prejudice as indicated
above.

### C. Statute of Limitations

Before turning to Scott's failure-to-protect and
excessive-force claims individually, the court will first
address McClain, Boyd, Urquhart, Holcey, and Baskin's
argument that the applicable two-year statute of
limitations under 42 U.S.C § 1983 bars these damages
claims against them in their individual capacities,
because, according to these defendants, "the original
complaint was filed on August 27, 2021" and "[i]t appears
that the conduct complained of by [Scott] might have
occurred prior to August 27, 2019." Brief in Support
(Doc. 55) at 18. However, Scott alleges that he reported
White's threats in September 2019 (after August 27, 2019)
and was then transferred into the dormitory where he was
raped by White for the first time. Accordingly, the
statute of limitations does not clearly bar White's

§ 1983 claims, and dismissal on statute-of-limitations grounds is inappropriate at this stage.


### D. Individual-Capacity Claims

As a result of the above discussion, Scott has only two remaining claims: Eighth Amendment failure-to-protect and excessive-force claims. And they are against only McClain, Boyd, Urquhart, Holcey, and Baskin in their individual capacities.


### 1. Individual-Capacity Failure-to-Protect Claim

Scott alleges that McClain, Boyd, Urquhart, Holcey, and Baskin unconstitutionally failed to protect him. The Eighth Amendment prohibits state governments from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. The prohibition on cruel and unusual punishments requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation

marks omitted). The duty to protect encompasses "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks omitted). When a plaintiff invokes this principle in a lawsuit against prison officials, plaintiff's claims are referred to as "failure-to-protect" claims. *See Cox v. Nobles*, 15 F.4th 1350, 1357–58 (11th Cir. 2021).

To succeed on his failure-to-protect claim, Scott must satisfy three elements. *See id.* at 1358. First, he must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 832). Second, he must show that the "prison official [had] a sufficiently culpable state of mind," amounting to "deliberate indifference." *Id.* (internal quotation marks omitted). Third, and finally, he must demonstrate causation, that is, that the constitutional violation caused his injuries. *Id.* (citing *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)).

In response, McClain, Boyd, Urquhart, Holcey, and Baskin invoke qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the defendant officials establish that they were acting within their discretionary authority, the court engages in two distinct inquiries to determine if qualified immunity applies: (1) whether the plaintiff's allegations "make out a violation of a constitutional right," and (2) whether "the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A right is clearly established if there is: (1) factually indistinguishable caselaw from the Eleventh Circuit or Supreme Court, (2) broad statements of legal principles that apply with "obvious clarity to the circumstances,"

15

or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021).

Applying this qualified-immunity framework, and for the following reasons, Scott's Eighth Amendment failure-to-protect claim will proceed against McClain, Holcey, and Baskin; it will be dismissed without prejudice as to Boyd and Urquhart.

### a.  McClain, Holcey, and Baskin

Scott's allegations state a clearly established Eighth Amendment failure-to-protect claim against McClain, Holcey, and Baskin.

First, Scott sufficiently pleads that White specifically posed a substantial risk of serious harm to him.  He alleges that he reported to McClain that White had threatened his safety multiple times, that White was known to pose a danger to vulnerable inmates like him, and that White had performed acts of violence on other

inmates.   Additionally, Holcey and Baskin essentially told Scott that he was going to be raped in the dormitory they were transferring him to (and that they were not going to do anything about it).   These allegations are sufficient to establish objectively that the risk White specifically posed to Scott constituted the requisite "strong likelihood" of injury necessary to establish a substantial risk of serious harm. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

Second, Scott alleges facts sufficient to establish deliberate difference.   Deliberate indifference has both a subjective and objective component. *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019).   Subjectively, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw the inference." *Id.*   Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she "knew of ways to reduce the harm" but knowingly or recklessly declined to act.   *Id.*

17

McClain, Holcey, and Baskin were all subjectively aware of the risk posed to Scott.  McClain was expressly informed of White's repeated threats to Scott.  Holcey and Baskin, as they transferred Scott to White's dormitory, not only laughed at Scott, they threatened to stand by and watch Scott be raped, and they told him that there was nothing his "stupid white ass could do about it."  First Amended Complaint (Doc. 46) at 5.  If true, Holcey and Baskin's own statements evidence that they were subjectively aware of the threat of rape posed against Scott, a threat that became reality.

Additionally, McClain's response to the known risk of harm was objectively reckless--he laughed in Scott's face and then transferred Scott to reside with the very person Scott said was threatening him.  Similarly, Holcey and Baskin responded to the known risk by executing the transfer, while beating Scott, and laughing while Holcey said that Scott was going to be "fucked in the ass and stabbed white boy, and maybe they will kill your retarded cracker ass."  *Id.*  Further, Holcey and Baskin observed-

-or, at least, were aware of--the first rape and did nothing to stop it.  Finally, McClain placed Scott back into the dormitory after he was treated for the initial rape, where he was raped by White again.  All of which, if true, constitutes deliberate indifference and a reckless disregard to a substantial risk of serious harm.

Third, and finally, Scott sufficiently alleges causation.  Causation is met in the failure-to-protect context where a defendant is "in a position to take steps that could have averted [the serious injury] ... but, through [deliberate] indifference, failed to do so." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007).  Here, McClain could have averted the injury by not transferring Scott to live with the very person Scott told McClain was threatening him.  Moreover, McClain could have transferred Scott out of the dormitory after the first rape.  Meanwhile, Holcey and Baskin could have attempted to stop the initial transfer, they could have not executed the transfer while beating and threatening to watch Scott be raped, and they could have

19

intervened instead of standing by and observing while White forced Scott into a covered bunk.[2]

Accordingly, because Scott pled facts that clearly show all elements of a failure-to-protect claim, both as a matter of binding caselaw and obvious clarity, McClain, Holcey, and Baskin are not entitled to qualified immunity at this stage and the motion to dismiss this claim will be denied to this extent.

### b. Boyd and Urquhart

To the extent that Scott brings an Eighth Amendment failure-to-protect claim against Boyd and Urquhart, the

---

2. Courts often separately denominate deliberate indifference failure-to-protect and failure-to-intervene claims; however, the elements are the same, and a failure-to-intervene claim is a type of failure-to-protect claim. *See Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005). Failing to intervene is just one way in which an official can recklessly respond to a substantial risk of serious harm so as to constitute deliberate indifference. Here, Scott sufficiently alleges that Holcey and Baskin responded recklessly to the threat posed by White in multiple ways, including by failing to intervene once Scott was forced to the bunk by White.

claim will be dismissed without prejudice. Unlike the other defendants, Scott does not specifically allege that Boyd or Urquhart were aware of Scott's initial or subsequent placement in the dormitory with White. Indeed, Boyd is not identified whatsoever in Scott's factual allegations. And Urquhart is mentioned only once, when Scott alleges that "[d]efendant Urquhart was warned and aware that [Scott] could or would be attacked." First Amended Complaint (Doc. 46) at 6. However, this bare allegation does not specify when Urquhart was aware that Scott could be attacked or who might attack him, nor does it allege that Urquhart participated in the decision to transfer Scott or in the execution of the transfer itself, or that Urquhart observed White attacking Scott. Accordingly, Boyd and Urquhart are entitled to qualified immunity, and Scott's failure-to-protect claim will be dismissed without prejudice as to them.

### c. Another Matter

There are generally two categories of threats for failure-to-protect claims: 'individualized threats' and 'general threats.' *See Marbury*, 936 F.3d at 1233–36 (delineating between types of threat). Individualized-threat claims deal with specific threats made against a plaintiff, while general-threat claims deal with factual allegations that conditions of confinement generally create a substantial risk of serious harm from inmate-on-inmate violence to the plaintiff. Here, as explained above, the amended complaint's framing clearly advances an individualized claim against McClain, Holcey, and Baskin based on specific threats. However, while it appears in his amended complaint that Scott seeks systemic relief for inmate-on-inmate violence, it does not sufficiently allege a "general threat posed by inmate-on-inmate violence" resulting from the conditions of confinement at the Bullock facility, the dormitory, or any other prison. *Id.* at 1233. Accordingly, to the extent that

22

Scott seeks relief for general threats of inmate-on-inmate violence due to conditions of confinement, his failure-to-protect claim will be dismissed without prejudice.


### 2. Individual-Capacity Excessive-Force Claim

Scott also alleges that he was "beaten [and] humiliated" with deliberate indifference by McClain, Boyd, Urquhart, Holcey, and Baskin. First Amended Complaint (Doc. 46) at 10. However, the amended complaint factually alleges that only Holcey and Baskin beat him. Accordingly, McClain, Boyd, and Urquhart will be dismissed as to this claim.

As to the excessive-force claim to the extent it is against Holcey and Baskin, Scott alleges that, while he was being transferred from a cell to a dormitory, they repeatedly kicked him while laughing at him and saying that they were going to watch him get "fucked in the ass and stabbed white boy," and saying that there was nothing

his "stupid white ass could do about it." *Id.* at 5.
Scott further alleges that the kicks caused hearing loss
in his right ear. *Id.* at 8.

These allegations sufficiently state a clearly
established violation of the Eighth Amendment right to
be free from excessive force. Eighth Amendment
excessive-force claims have two components. First,
objectively, the force used must be "sufficiently
serious" to "offend[] contemporary standards of decency."
*Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir.
2020). Second, the force must "have been sadistically
and maliciously applied for the very purpose of causing
harm." *Id.*

Scott's allegations, if true, clearly satisfy both
prongs. He alleges that he was sadistically beaten for
no plausible reason and that the assaulters taunted him
with racial epithets while threatening to stand by and
do nothing while another prisoner raped him. He also
alleges that the beating resulted in hearing loss. This
alleged use of force is precisely the type that is

**24**

"repugnant to the conscience of mankind" as can state a clearly established violation of the Eighth Amendment. *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)).

Accordingly, accepting the complaint's allegations as true, Holcey and Baskin are not entitled to qualified immunity as to Scott's Eighth Amendment excessive-force claim against them and their motion to dismiss will be denied as to these claims. However, as discussed, the excessive-force claim to the extent it is brought against the other defendants will be dismissed without prejudice.

\*\*\*

Accordingly, in light of the above discussion, only the following claims will proceed: Scott's Eighth Amendment claim for failure to protect against McClain, Holcey, and Baskin in their individual capacities, and his Eighth Amendment claim for excessive force against Holcey and Baskin in their individual capacities.

All other claims and defendants will be dismissed as follows: all claims to the extent they seek damages from defendants in their official-capacities will be dismissed

with prejudice; all claims to the extent they seek injunctive and declaratory relief from defendants in their official capacities will be dismissed without prejudice; all claims to the extent they are based on the First, Fourth, and Fourteenth Amendments will be dismissed without prejudice; the Eighth Amendment failure-to-protect claim will be dismissed as to Boyd and Urquhart without prejudice; the Eighth Amendment failure-to-protect claim, to the extent relief is sought for a "general threat," will be dismissed without prejudice; the Eighth Amendment excessive-force claim will be dismissed as to McCain, Boyd, and Urquhart without prejudice; and, because no claims remain against Dunn, Boyd, and Urquhart, these defendants will be dismissed entirely.

An judgment consistent with this opinion will be entered separately.

DONE, this the 14th day of March, 2023.

                        /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE